IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MARIAH GRIFFIN,
    Plaintiff,

-vs-

FORD MOTOR COMPANY,
    Defendant.

CAUSE NO.:
A-17-CA-00442-SS

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Ford Motor Company (Ford)'s Motion to Dismiss, and in the Alternative, Motion to Transfer Venue [#4], Plaintiff Mariah Griffin's Response [#5] in opposition, and Ford's Reply [#6] in support. Having reviewed the documents, the governing law, the arguments of the parties at the hearing, and the file as a whole, the Court now enters the following opinion and order.

## Background

This case involves claims for negligence and products liability arising from a vehicle accident involving a 2010 Ford Focus (the Vehicle). Plaintiff Mariah Griffin alleges that on October 24, 2015, Jake Whitmore was driving the Vehicle in the eastbound lane on RM 1826 in Hays County, Texas, when he drifted into oncoming traffic and struck another vehicle. Compl. [#1] ¶ 3.01. Griffin, who owned the Vehicle, was riding in the front passenger seat. *Id.* According to Griffin, she suffered "serious injuries to her face and body as a result of the passenger side air bags failing to deploy." *Id.* ¶ 3.03. On May 11, 2017, Griffin filed this suit



against Ford, asserting claims for negligence and strict liability based on the allegedly defective design, manufacture, and warnings of the Vehicle and its side air bags. *Id.* ¶ 4.01.

Griffin resides in Travis County, Texas. *Id.* ¶ 1.01. Griffin generally alleges Ford manufactures, promotes, and distributes its vehicles in Texas. *Id.* ¶ 1.02. Ford is a Delaware corporation with its principal place of business in Michigan. Mot. Dismiss [#4-2] Ex. A (Krishnaswami Decl.) ¶ 6. According to Ford, Ford made the primary decisions regarding the Vehicle's design and development in Michigan, and the Vehicle was assembled at Ford's assembly plant in Wayne, Michigan. *Id.* ¶ 4. On August 31, 2009, Ford sold the Vehicle to Elder Ford, an independently-owned dealership located in Troy, Michigan. *Id.* ¶¶ 5–6. Elder Ford then sold or leased the Vehicle to a Michigan resident on September 25, 2009. *Id.* [#4-4] Ex. C (Certified Vehicle Title History) at 15. Sometime in 2012, the Vehicle was sold to a used car dealer located in Austin, Texas. *Id.*

Ford acknowledges the presence of Ford dealerships in Texas, but contends it "does not directly engage in servicing Ford vehicles in Texas." *Id.* [#4-3] Ex. B (Michael DeYoung Decl.) ¶ 3. Rather, Ford maintains these dealerships are "independent entities" which must agree to expressly disavow "the relationship of principal and agent between the Company [Ford] and the Dealer" and agree that "under no circumstances shall the Dealer be considered to be an agent of the company." Mot. Dismiss [#4] at 4; Michael DeYoung Decl. ¶ 4.

On June 5, 2017, Ford moved to dismiss Griffin's suit for lack of personal jurisdiction. The parties fully briefed the motion and it is now ripe for the Court's consideration.

## Analysis

### I. Personal Jurisdiction

Ford moves to dismiss Griffin's complaint based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the court considers first whether exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

The Due Process Clause requires a nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to either general personal jurisdiction or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Freudensprung*, 379 F.3d at 343. A court exercises general jurisdiction over the defendant if the defendant has "continuous and systematic contacts" with

the forum, regardless of whether those contacts are related to the cause of action asserted in the case. *Id.* Specific jurisdiction, by contrast, is based on the proposition "that 'the commission of some single or occasional acts of the [defendant] in a state' may sometimes be enough to subject the [defendant] to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318).

The plaintiff has the burden of making a prima facie case showing that a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* On a Rule 12(b)(2) motion to dismiss, the Court may consider the "contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [her] favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). However, the Court is not required to accept as true conclusory allegations, even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## II. Application

Griffin argues Ford has sufficient "minimum contacts" with Texas to justify the Court's exercise of specific—rather than general—jurisdiction.[1] *See* Resp. [#5] at 2. In the Fifth Circuit, courts generally look to three factors in analyzing specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

A court may exercise specific jurisdiction over a nonresident defendant who "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electrosource, Inc. v. Horizon Battery Techns., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (internal citation omitted). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (internal quotation and citation omitted).

Griffin maintains Ford purposely availed itself of the privileges of conducting business in Texas by placing its products in the "stream of commerce" with the expectation its goods will be purchased by consumers in Texas. Under this "stream-of-commerce" theory, a court may

---

[1] Griffin argues in the alternative that "whether the defendant has minimum contacts . . . in the forum state is irrelevant" when the defendant has been served in the forum state through a registered agent. Resp. [#5] at 15–17. But the existence of a registered agent, standing alone, is not sufficient to establish jurisdiction. *See, e.g., Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181 (5th Cir. 1992) ("The fact that service is proper does not resolve the question as to 'whether [the] plaintiff has demonstrated a sufficient basis for th[e] court's exercise of personal jurisdiction.'" (quoting *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 494 (5th Cir.1989)); *see also ADT, LLC v. Capital Connect, Inc.*, No. 3:15-CV-2252-G, 2015 WL 7352199, at * (N.D. Tex. Nov. 20, 2015) ("[T]he fact that [the defendant] registered with the Texas Secretary of State and designated a Texas agent to receive process on its behalf is not sufficient to establish specific jurisdiction over the defendant.").

exercise specific jurisdiction over a defendant as long as the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006) (quoting *World-Wide Volkswagen*, 444 U.S. at 298).

According to Griffin, Ford places its Ford Focus vehicles in the stream of commerce, advertises and markets its vehicles in Texas, distributes these vehicles in Texas through a network of Ford dealerships, and sells parts in Texas for the purpose of maintaining and servicing Ford vehicles purchased by Texas consumers. Griffin further alleges there are 273 Ford dealers in Texas and points to evidence that Ford sold over 17,000 Ford Focus vehicles in the United States in May 2017 alone. Resp. [#5-10] Ex. J (Ford May 2017 U.S. Sales). Ford does not dispute it places Ford Focuses in the stream of commerce, or that it advertises and markets its vehicles in Texas. Based on the foregoing, the Court finds Ford purposely availed itself of the privileges of conducting business in Texas.

Griffin must also show, under the second prong of the specific jurisdiction inquiry, that her claims "arise[] out of" or "relate[] to" Ford' Texas contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 427 (1984); *see also Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x 229, 232–33 (5th Cir. 2013) (reasoning the plaintiff's "stream-of-commerce" theory, standing alone, was insufficient to establish personal jurisdiction). In determining whether a plaintiff's claims "relate to" a defendant's contacts with the forum state, the volume of products placed in the stream of commerce may be relevant. *See Irvin*, 517 F. App'x at 232 (citing *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984)). For instance, in *Oswalt v. Scripto, Inc.*, the Fifth Circuit upheld jurisdiction over a foreign manufacturer of lighters that delivered its lighters to a single distributor in the United States with the

...

understanding the distributor would sell the lighters to a "nation-wide market, that is, in any or all states." 616 F.2d 191, 199–200 (5th Cir. 1980).

In this case, Griffin produced evidence Ford introduced thousands of Ford Focus vehicles into the stream of commerce. *See* Ford May 2017 U.S. Sales. Ford does not contend these vehicles were not sold in Texas, just that the Vehicle at issue was originally sold in Michigan and therefore exited the stream of commerce before reaching Texas. But Ford does not dispute it directs marketing and advertising activities related to the Ford Focus vehicles in Texas; it distributes Ford Focus vehicles in Texas; or it sells part to maintain or service Ford Focus vehicles purchased by Texas consumers. Where, as here, the Vehicle was owned by a Texas resident, registered in Texas, and the defect surfaced in Texas, Ford cannot convincingly argue Griffin's claims—which are based on Ford's "promoting and/or distributing" of the Ford Focus in Texas—do not arise out of or relate to Ford's contacts with Texas.

Finally, Ford does not argue exercising jurisdiction in Texas would be unfair or unreasonable. Based on the specific facts of this case, the Court finds the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Because the Court may properly exercise specific jurisdiction over Ford, it declines to transfer this case to Michigan. Ford's motion to dismiss or transfer venue is therefore DENIED.

## Conclusion

Accordingly,

> IT IS ORDERED that Defendant Ford Motor Company's Motion to Dismiss, and in the Alternative, Motion to Transfer Venue [#4] is DENIED.

SIGNED this the 31st day of August 2017.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE